United States Court of Appeals
Fifth Circuit

**F I L E D**

**February 14, 2007**

Charles R. Fulbruge III
Clerk

*In the United States Court of Appeals
for the Fifth Circuit*

No. 05-10580

IBN ZAKARIYA MUHAMMAD,

Plaintiff - Appellant,

v.

DALLAS COUNTY COMMUNITY SUPERVISION AND CORRECTIONS
DEPARTMENT,

Defendant - Appellee.

Appeal from the United States District Court
for the Northern District of Texas
No. 3:03-CV-1726

Before JOLLY, PRADO and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

Ibn Zakariya Muhammad, a probation officer, sued Dallas County Community Supervision and Corrections Department (DCCSCD) for race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964,[1] and the district court dismissed those claims pursuant to FED. R. CIV. P. 12(b)(6) because it concluded that in Texas a community supervision and corrections department is, as a matter of law, not a probation officer's Title VII employer. On appeal, Muhammad challenges that determination and the

---

[1] 42 U.S.C. § 2000e–2000e-16c (2000 & Supp. 4).

district court's refusal to grant leave to file a third amended complaint. Because it has not been established as a matter of law that the DCCSCD was not Muhammad's employer, we reverse and remand for further proceedings.

**I**

Muhammad had worked as a probation officer in Dallas County, Texas for fourteen years when, proceeding *pro se*, he sued Dallas County under Title VII, 42 U.S.C. § 1981, and 42 U.S.C. § 1988, alleging that it retaliated and discriminated against him based on his race by: (1) assigning him an unbearable workload, (2) forcing him to complete the work of non-black probation officers, and (3) reprimanding him when he was unable to complete the work. Muhammad later retained counsel to represent him in the matter. After learning that Dallas County was not his employer, Muhammad amended his complaint to name DCCSCD as the defendant. In a second amended complaint, Muhammad expanded his Title VII retaliation claim to allege specifically that DCCSCD denied him a promotion and merit and step increases because he exercised his equal employment rights.

DCCSCD filed a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(1) and (6), arguing in part that (1) the district court lacked jurisdiction over Muhammad's § 1981 and § 1988 claims because they were barred by Eleventh Amendment sovereign immunity and (2) Muhammad failed to state a Title VII claim because DCCSCD was, as a matter of law, not his employer for Title VII purposes. According to DCCSCD, probation officers in Texas are employed by the district judges of the judicial district of their county, not by the county's

2

community supervision and corrections department. In response to DCCSCD's motion, Muhammad moved the court for leave to amend his complaint for the third time so that he could add the Dallas County District Judges as defendants.

While Muhammad's third motion to amend his complaint was pending, the district court dismissed Muhammad's § 1981 and § 1988 claims, concluding that they were barred by sovereign immunity. The district court, however, denied DCCSCD's 12(b)(6) motion to dismiss Muhammad's Title VII claims because the court was unable to determine as a matter of law that DCCSCD was not Muhammad's Title VII employer. The district court then denied Muhammad's third motion to amend his complaint as futile since Muhammad had not filed an Equal Employment Opportunity Commission charge against the Dallas County District Judges.

Subsequently, the district court *sua sponte* reconsidered whether DCCSCD was Muhammad's Title VII employer, concluded that it was not, and dismissed Muhammad's complaint in its entirety. Muhammad timely appealed the district court's 12(b)(6) dismissal of his Title VII claims and the denial of his motion for leave to file a third amended complaint.

## II

We review the district court's 12(b)(6) dismissal *de novo*.[2] We construe Muhammad's complaint in the light most favorable to him, accepting all well-pleaded facts

---

[2]*Gen. Elec. Capital Corp. v. Posey*, 415 F.3d 391, 395 (5th Cir. 2005).

3

as true.[3] "The issue is not whether [Muhammad] will ultimately prevail, but whether he is entitled to offer evidence to support his claim."[4] Thus, we will affirm the district court's 12(b)(6) dismissal only if we conclude that Muhammad "would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint."[5]

Determining whether a defendant is an "employer" under Title VII involves a two-step process.[6] First, the court must determine whether the defendant falls within Title VII's statutory definition of an "employer."[7] Title VII defines an "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees . . ., and any agent of such a person . . . ."[8] If the defendant meets this definition, the court must then analyze whether an employment relationship exists between the plaintiff and the defendant.[9]

To determine whether an employment relationship exists within the meaning of Title VII, "we apply a 'hybrid economic realities/common law control test.'"[10] The most

---

[3]*Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

[4]*Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999).

[5]*Id.*

[6]*Deal v. State Farm County Mut. Ins. Co.*, 5 F.3d 117, 118 n.2 (5th Cir. 1993).

[7]*Id.*

[8]42 U.S.C. § 2000e(b) (2000).

[9]*Deal*, 5 F.3d at 118 n.2.

[10]*Id.* at 118-19.

4

important component of this test is "[t]he right to control [the] employee's conduct."[11]

"When examining the control component, we have focused on whether the alleged employer has the right" to hire, fire, supervise, and set the work schedule of the employee.[12] "State law is relevant insofar as it describes the plaintiff's position, including his duties and the way he is hired, supervised and fired."[13] The economic realities component of the test focuses on "whether the alleged employer paid the employee's salary, withheld taxes, provided benefits, and set the terms and conditions of employment."[14]

The dispositive issue in this case is whether in Dallas County, Texas the Community Supervision and Corrections Department is, as a matter of law, not a probation officer's Title VII employer. The district court relied in part on *Clark v. Tarrant County*.[15] In that case, female employees sued the Tarrant County Adult Probation Department and Tarrant County under Title VII and 42 U.S.C. § 1983, alleging that they had been discriminated against because of their sex.[16] Tarrant County filed a 12(b)(6) motion to dismiss, claiming that it was not the plaintiffs' Title VII employer because Texas statutory law gave control and

[11]*Id*. at 119.

[12]*Id.*

[13]*Calderon v. Martin County*, 639 F.2d 271, 273 (5th Cir. Unit B 1981); *see also Clark v. Tarrant County,*798 F.2d 736, 747 (5th Cir. 1986) ("While the status of an employee is a question of federal law in determining a Title VII claim, state law is relevant in describing the duties and supervision of the employees.").

[14]*Deal*, 5 F.3d at 119.

[15]798 F.2d at 736.

[16]*Id.* at 738.

5

direction of the Adult Probation Department to the state judiciary.[17] In deciding the matter, the district court held a hearing at which several witnesses, including two state-court judges and a Tarrant County auditor, testified about the employment relationship between probation officers and the county.[18] Because the district court considered matters outside the pleadings, the defendants' 12(b)(6) motion was converted into a motion for summary judgment.[19] The district court granted summary judgment in favor of Tarrant County, holding that because the County did not hire, fire, promote, or supervise Adult Probation employees, it was not the plaintiffs' employer for Title VII purposes.[20]

On appeal, we looked to Texas state law to understand the nature of the relationship between probation officers and the counties in which they work. We noted that under Texas law, "the authority to appoint and set salaries for probation officers is the prerogative of the state judges . . . ."[21] We also found persuasive the state judges' testimony that they had the power to appoint probation officers. Because "[t]he evidence before the court and Texas case law clearly demonstrate[d] that Tarrant County had no authority to set salaries or to decide promotion of adult probation officers, and there was no contrary evidence," we

---

[17]*Id.* at 739.

[18]*Id.* at 740.

[19]*Id.* at 745 (citing FED. R. CIV. P. 12(b), which provides: "If, on a [12(b)(6) motion], matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . .").

[20]*Id.* at 746.

[21]*Id.* at 747.

concluded that "[t]he district court correctly determined as a matter of law that . . . [the plaintiffs] did not state a claim against Tarrant County . . . ."[22]

In this case, the district court expressly refrained from "invok[ing] the 'hybrid economic realities/common law control test' or resort[ing] to Texas state law" because it concluded that federal law (*i.e.*, *Clark*) decided the issue of whether DCCSCD was Muhammad's Title VII employer. However, *Clark* does not stand for the proposition that a community supervision and corrections department is, as a matter of law, not a probation officer's Title VII employer or that district judges are, as a matter of law, a probation officer's Title VII employer. Rather, *Clark* simply holds that a county is not a probation officer's Title VII employer when "[t]he evidence before the court and Texas case law clearly demonstrate that [the] County ha[s] no authority to set salaries or to decide promotion of adult probation officers, and there [i]s no contrary evidence."[23] In other words, had the plaintiffs in *Clark* (1) demonstrated that Tarrant County met Title VII's statutory definition of an "employer" and (2) satisfied the "hybrid economic realities/common law control test," Tarrant County would have been their Title VII employer, and thus, could have been held liable under Title VII.

The district court also cited *Hardin County Community Supervision & Corrections Department v. Sullivan*, a Texas Court of Appeals' case which expressly held "that it is the

---

[22]*Id*. at 747-48.

[23]*Id.*

district judges of the judicial district, and not [the Hardin County Community Supervision and Corrections Department], that is the employer of [adult probation officers]" for purposes of the Texas Commission on Human Rights Act (TCHRA).[24] In *Calderon v. Martin County*, this court was confronted with a similar state-court holding.[25] In that case, a Florida deputy sheriff brought a Title VII suit against his county, the sheriff's department, and the sheriff, claiming that he was fired because of his national origin.[26] The defendants moved to dismiss the claim pursuant to Rule 12(b)(6), arguing that under Florida law the plaintiff was not an "employee" within the meaning of Title VII.[27] The district court, relying on a Florida Supreme Court case, held that the plaintiff was not an "employee" for Title VII purposes and granted the defendants' motion to dismiss.[28]

On appeal, we reversed the district court's dismissal "because a plaintiff's status as an employee under Title VII is a question of federal, rather than of state, law."[29] Therefore, it was not enough that the Florida Supreme Court had decided the issue.[30] Rather than

---

[24]106 S.W.3d 186, 190 (Tex. App.—Austin 2003, pet denied).

[25]639 F.2d 271 (5th Cir. Unit B 1981).

[26]*Id.* at 272.

[27]*Id.*

[28]*Id.* at 272 & n.3.

[29]*Id*. at 272-73.

[30]*Id*. at 273 ("A state court determination that a particular type of worker is not an 'employee' for purposes of state statutes . . . does not in itself resolve the issue of whether that worker is an employee for purposes of Title VII.").

looking solely at state law, "[a] plaintiff's status as an employee under Title VII . . . is to be ascertained through consideration of the statutory language of the Act, its legislative history, existing federal case law, and the particular circumstances of the case at hand."[31] Accordingly, we remanded the case to the district court "to make further factual findings about the nature and circumstances of [the plaintiff]'s position as a deputy sheriff and to consider whether, in light of the language and history of Title VII, Congress intended that one in that position receive the protection of the act."[32] As *Calderon* teaches, the mere fact that a Texas Court of Appeals has held that state judges are probation officers' employers for TCHRA purposes is not dispositive of Muhammad's Title VII claims.

The "hybrid economic realities/common law control test" is necessarily a fact-specific inquiry[33] and is therefore typically applied in a summary judgment context, in which a court is permitted to go beyond the pleadings and examine the state law and the evidence relevant to the employment relationship.[34] Here, however, the district court did not go beyond Muhammad's complaint. The court did not examine the relationship between the state district judges and the DCCSCD or the authority given to the DCCSCD under Texas law. Prior to amendments that took effect in 2005 and do not apply here, section 76.002 of the

---

[31]*Id.* at 272-73.

[32]*Id.* at 273.

[33]*See McClure v. Salvation Army*, 460 F.2d 553, 557 (5th Cir. 1972) ("Because Title VII's definition of 'employee' is not restrictive, the existence of such status for a certain individual must turn on the facts of each case.").

[34]*See, e.g.*, *Clark v. Tarrant County*, 798 F.2d 736 (5th Cir. 1986).

Texas Government Code provided that "[t]he district judge[s] . . . in each judicial district shall: (1) establish a community supervision and corrections department; and (2) employ district personnel as necessary to conduct presentence investigations, supervise and rehabilitate defendants placed on community supervision, enforce the conditions of community supervision, and staff community corrections facilities."[35]  The Code further provided that "[t]he district judge[s] . . . shall appoint a department director who . . . shall employ a sufficient number of officers and other employees to perform the professional and clerical work of the department."[36]

As previously noted, Title VII defines an "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees . . ., and any agent of such a person . . . ."[37]  Title VII does not define an "agent."  However, this court has held that the agent "must be an agent with respect to employment practices"[38] and would be limited to supervisory or managerial employees to whom employment decisions have been delegated.[39]  Muhammad could establish that DCCSCD falls within Title VII's definition of an

---

[35]TEX GOV'T CODE ANN. § 76.002(a)(1), (a)(2) (West 2003) (amended 2005).

[36]*Id*. § 76.004(a), (b).

[37]42 U.S.C. § 2000e(b).

[38]*Deal v. State Farm County Mut. Ins. Co.*, 5 F.3d 117, 119 (5th Cir. 1993).

[39]*Cf. Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292, 297 (5th Cir. 1994) ("We agree . . . that an agent of an employer under the [Age Discrimination in Employment Act] is generally a 'supervisory or managerial employee to whom employment decisions have been delegated by the employer'" (quoting *York v. Tenn. Crushed Stone Ass'n*, 684 F.2d 360, 362 (6th Cir. 1982))).

"employer" by either showing that DCCSCD is: (1) itself "a person engaged in an industry affecting commerce who has fifteen or more employees" or (2) an agent of the Dallas County district judges who are themselves "person[s] engaged in an industry affecting commerce who ha[ve] fifteen or more employees."

DCCSCD's Title VII status is to be determined after "consideration of the statutory language of the Act, its legislative history, existing federal case law, and the particular circumstances of the case at hand."[40] Therefore, we reverse the district court's 12(b)(6) dismissal of Muhammad's Title VII claims and remand so the district court can make further factual findings about the nature and circumstances of Muhammad's position as a probation officer and consider whether DCCSCD was his employer for Title VII purposes.

### III

In addition to dismissing Muhammad's Title VII claims, the district court also denied Muhammad's motion for leave to file a third amended complaint to add the Dallas County district judges as defendants. We review the district court's denial of Muhammad's motion for an abuse of discretion.[41] For the reasons stated in the district court's memorandum opinion and order, we conclude that there was no abuse of discretion.

---

[40]*Calderon v. Martin*, 639 F.2d 271, 273 (5th Cir. Unit B 1981).

[41]*Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 (5th Cir. 1981).

\* \* \* \* \*

For the foregoing reasons, we REVERSE and REMAND FOR FURTHER PROCEEDINGS.