**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**July 17, 2007**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 06-20743

DAVID MEADOWS,

Plaintiff-Appellant,

versus

HARTFORD LIFE INSURANCE COMPANY; HARTFORD LIFE PRIVATE PLACEMENT LLC;
THE NEWPORT GROUP, INC.; HENRY F MCCAMISH, JR; MCCAMISH GROUP LP;
MCCAMISH SYSTEMS LLC; INTEGRATED ADMINISTRATION SERVICES INC; IAS
DEVELOPMENT CORPORATION,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Texas

Before JOLLY, STEWART, and CLEMENT, Circuit Judges.

CARL E. STEWART, Circuit Judge:

This appeal arises from the district court's dismissal, pursuant to Federal Rule of Civil

Procedure 12(b)(6), of David Meadows's claims brought under Texas state law against several

defendants. The causes of action pleaded were misappropriation of name and identity, knowing

participation in a breach of fiduciary duty, violation of the Theft Liability Act, and civil conspiracy.

We affirm the district court's judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Meadows sued Hartford Life Insurance Co., Hartford Life Private Placement, L.L.C., and the Newport Group, Inc. (collectively "Hartford"), after learning that Hartford underwrote, administered, and maintained a life insurance policy in his name. The policy on Meadows's life was one of approximately 1,400 life insurance policies issued to Camelot Music, Inc. ("Camelot"), his former employer. The life insurance policies covered Camelot employees. Camelot was the beneficiary of the policies, as opposed to an employee-designated beneficiary. This type of policy is known as corporate-owned life insurance ("COLI"). Mutual Benefit Life Insurance Co. ("Mutual") issued the COLI policies to Camelot after Newport Group, Inc. ("Newport") marketed the concept. After Camelot purchased the policies, Mutual transferred its interest in the policy premiums and its obligation to administer the policies to Hartford.

Camelot employed Meadows, a Texas resident, from December 1987 to April 1995. During his employment, Meadows disclosed his name, date of birth, state of residence, and social security number to his employer. Camelot disclosed this information to Hartford for the purpose of purchasing and maintaining the COLI policy. Meadows alleged that Hartford used his personal information to conduct searches, called "death sweeps," to determine whether Meadows had died. Meadows contends that he never provided consent for Camelot to disclose his name and personal information. Further, according to Meadows, Hartford benefitted financially from Camelot's disclosure of his personal information.

Meadows also asserted the above allegations on behalf of a putative class of former Camelot employees insured by COLI policies.[1]  Meadows set forth four theories of recovery: (1) misappropriation of his name and identity; (2) knowing participation in a breach of fiduciary duty; (3) violation of the Theft Liability Act; and (4) civil conspiracy.  He also included a prayer for equitable relief.

Hartford filed a motion to dismiss the claims.  The district court initially dismissed only the misappropriation and Theft Liability Act claims.  After Hartford filed a petition for certification of interlocutory appeal and Meadows sought reconsideration, the district court entered an Amended Memorandum and Order dismissing all of Meadows's claims, including the breach of fiduciary duty claim and the civil conspiracy claim related to the breach.

Meadows now appeals the district court's dismissal of the misappropriation, fiduciary duty, and civil conspiracy claims.  Meadows does not appeal the dismissal of his Theft Liability Act claim.  Finally, Meadows challenges the district court's implicit rejection of his claim for equitable relief.

## II.  STANDARD OF REVIEW

We review de novo a district court's Rule 12(b)(6) dismissal of a complaint.  *Muhammad v. Dallas County Cmty. Supervision & Corr. Dep't*, 479 F.3d 377, 379 (5th Cir. 2007).  In construing the complaint in a light most favorable to the plaintiff, this court affirms a 12(b)(6) dismissal if we determine that the plaintiff "would not be entitled to relief under any set of facts or any possible

---

[1]The COLI policies no longer exist because Camelot surrendered the policies to Hartford as the result of an earlier lawsuit filed by Meadows.  In that lawsuit, Meadows, on behalf of a putative class, asserted that Camelot lacked an insurable interest in the class members' lives.  Even though the district court agreed that Camelot lacked an insurable interest, it denied Meadows and the other plaintiffs their sought after relief.

theory that he could prove consistent with the allegations in the complaint." *Id.* at 379-80 (internal quotation omitted).

This court "review[s] for an abuse of discretion a district court's denial of equitable relief when that denial stems from its weighing of the equities." *See In re "Ronfin" Series C Bonds Sec. Interest Litig.*, 182 F.3d 366, 370 (5th Cir. 1999).

III.  DISCUSSION

A.

Under Texas law, "[o]ne who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy." *Matthews v. Wozencraft*, 15 F.3d 432, 437 (5th Cir. 1994) (quoting RESTATEMENT (SECOND) OF TORTS § 652C (1977) [hereinafter RESTATEMENT] ); *see also Kimbrough v. Coca-Cola/USA*, 521 S.W.2d 719, 722 (Tex. Civ. App. 1975) (acknowledging the invasion of privacy tort).  A misappropriation claim includes the following three elements: "(i) that the defendant appropriated the plaintiff's name or likeness for the value associated with it, and not in an incidental manner or for a newsworthy purpose; (ii) that the plaintiff can be identified from the publication; and (iii) that there was some advantage or benefit to the defendant." *Matthews*, 15 F.3d at 437.

Texas courts rely on the Restatement as the "definitive source of guidance in cases involving invasion of the right of privacy." *Moore v. Big Picture Co.*, 828 F.2d 270, 272 (5th Cir. 1987). Pursuant to the Restatement, an appropriation occurs when a defendant "pass[es] himself off as the plaintiff or otherwise seek[s] to obtain for himself the values or benefits of the plaintiff's name or identity." *See* RESTATEMENT § 652C cmt. c.  In Texas, "[t]ortious liability for appropriation of a

4

name or likeness is intended to protect the value of an individual's notoriety or skill." *See Matthews*, 15 F.3d at 437.

The district court dismissed Meadows's misappropriation claim because he failed to allege that the Defendants received a financial gain based on any special skills or good will associated with his name. Meadows contends that misappropriation occurs whenever a defendant appropriates an identity of any value. Meadows asserts that his identity had value to himself and Hartford. Hartford received premiums from the COLI policy on his life, which establishes his identity's value to Hartford, and the policy could not exist without his identity. On the other hand, Meadows's identity had value to himself because, had he known that Camelot wanted to purchase a COLI policy on his life, he could have charged Camelot a fee.

The Restatement provides limited support for Meadows's argument that misappropriation can occur even though the plaintiff has no appreciable notoriety, skill, or good will, in the commercial market. *See* RESTATEMENT § 652C cmt. b, illus. 3, 5-6. In *Matthews*, however, the Fifth Circuit considered Texas's cause of action for misappropriation. The *Matthews* court indicated that, to establish a claim for misappropriation, something "unique" about the person's name must exist or the tortfeasor must "cash [] in" on goodwill associated with the plaintiff's name. 15 F.3d at 437. Moreover, "[t]he tort of misappropriation of name or likeness . . . creates property rights only where the failure to do so would result in excessive exploitation of its value." *Id.* at 438. The excessive exploitation mentioned by the court refers to preventing the value reduction of one's property rights in his name or likeness due to the tortfeasor's use of these. *Id.* at 438-39.

In this appeal and his original complaint, Meadows does not contend that the COLI policy on his life prevented him from obtaining life insurance or reduced the value of his identity. Thus,

5

Meadows presented no cognizable arguments that the COLI policy constituted excessive exploitation or a reduction in value of his identity. Accordingly, the restrictive interpretation of misappropriation under Texas law does not apply to Meadows's claims.

B.

Under Texas law, "where a third party knowingly participates in the breach of duty of a fiduciary, such third party becomes a joint tortfeasor with the fiduciary and is liable as such." *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, 514 (Tex. 1942). To establish a claim for knowing participation in a breach of fiduciary duty, a plaintiff must assert: (1) the existence of a fiduciary relationship; (2) that the third party knew of the fiduciary relationship; and (3) that the third party was aware that it was participating in the breach of that fiduciary relationship. *See Cox Tex. Newspapers, L.P. v. Wootten*, 59 S.W.3d 717, 721-22 (Tex. App. 2001) (citing *Kinzbach Tool*, 160 S.W.2d at 514).

The district court concluded that Meadows's complaint did not allege facts sufficient to support an inference of a fiduciary relationship between Camelot and Meadows. Meadows contends that he alleged the existence of a "confidential relationship," as Camelot occupied a special position of trust with respect to his confidential personal information used to obtain the COLI policy.

Texas courts characterize confidential relationships as informal fiduciary relationships that may arise "where one person trusts in and relies on another, whether the relation is a moral, social, domestic, or purely personal one." *See Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 176 (Tex. 1997). In addition, confidential relationships may arise when the parties have "dealt with each other in such a manner for a long period of time [and] one party is justified in expecting the other to act in its best interest." *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998). To create

6

a confidential relationship in a business transaction, the relationship must exist prior to, and apart from, the agreement forming the basis of the suit. *See Schlumberger*, 959 S.W.2d at 177.

Meadows points to no case that supports his notion that the mere existence of an employer/employee relationship creates a fiduciary duty under the circumstances presented in this appeal. In Texas, employers generally do not owe fiduciary duties to their employees. *See Beverick v. Koch Power, Inc.*, 186 S.W.3d 145, 153 (Tex. App. 2005) ("Texas does not recognize a fiduciary duty . . . owed by an employer to an employee.") (citing *City of Midland v. O'Bryant*, 18 S.W.3d 209, 216 (Tex. 2000)). Moreover, Meadows's complaint fails to assert any allegations demonstrative of a confidential relationship between himself and Camelot. For these reasons, the allegations set forth to establish the breach of fiduciary duty claim cannot survive the motion to dismiss.

C.

Under Texas law, civil conspiracy is a derivative tort. If a plaintiff fails to state a separate underlying claim on which the court may grant relief, then a claim for civil conspiracy necessarily fails. *See Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996). Thus, whether Meadows stated a claim for civil conspiracy rises and falls on whether he stated a claim on an underlying tort. Based on our conclusion that Meadows's underlying tort claims were properly dismissed by the district court, we accordingly dismiss his claim of civil conspiracy.

D.

Finally, Meadows's complaint sought "all legal and equitable relief appropriate under this complaint." The district court dismissed the complaint without discussion of Meadows's equitable claim. In this appeal, Meadows contends that the district court erred because "it was unjust for the appellees to profit from using Meadows's private information without paying Meadows anything for

7

that information." Given the deferential standard of review accorded the district court and our legal conclusion that Meadows failed to otherwise state a claim upon which relief can be granted, we affirm the dismissal of Meadows's claim for equitable relief.

IV.  CONCLUSION

For the foregoing reasons, we affirm the district court's judgment.